MJP

# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FILED
2008 AUG 22 PM 12:56
CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be

Premises known as:
4231 Logan Avenue Apartment F
San Diego, California 92113

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

Case Number:

'08 MJ 2598

I, Special Agent Murry T. Streetman being duly sworn depose and say:

I am a(n) Special Agent of the Federal Bureau of Investigation (FBI) and have reason to believe
Official Title

that ☐ on the person of or x on the property or premises known as (name, description and/or location)

See Attachment A

in the SOUTHERN District of CALIFORNIA

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

Property that constitutes evidence of the commission of a criminal offense, contraband, the fruits of crime, things otherwise criminally possessed and property designed and intended for use and which is and has been used as the means for committing a criminal offense.

concerning a violation of Title 8 United States code, Section(s) 1324

The facts to support a finding of Probable Cause are as follows:

See Attached Affidavit in support of Application

Continued on the attached sheet and made a part hereof: x Yes ☐ No

Signature of Affiant

Sworn to before me and subscribed in my presence,

8/22/08 at SAN DIEGO, CALIF.
Date City and State

BARBARA L. MAJOR
U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Murry T. Streetman, a Special Agent of the United States Federal Bureau of Investigation (FBI) being duly sworn, declare and state:

**I**

**INTRODUCTION**

1. I have been employed by the FBI for twenty two months and have been assigned to work Alien Smuggling Investigations since January 2007. During the course of my employment as an FBI Special Agent, I have initiated or have been involved in investigations that employed various investigative techniques including physical surveillance, cooperating witnesses, consensual recordings, search warrants, Title III electronic intercepts, undercover operations, pen registers, trash covers, mail covers and grand jury proceedings.

2. As a Special Agent with the FBI, I have participated in alien smuggling investigations along with senior FBI, Immigration and Customs Enforcement (ICE) Special Agents, United States Border Patrol (USBP) Agents and Customs and Border Protection (CBP) Enforcement Officers. These investigations explored: (1) the unlawful bringing in and transportation of illegal aliens into the United States and within the borders of the United States; and (2) conspiracies associated with alien smuggling, such as aiding and abetting and money laundering in violation of Title 8 U.S.C. Section 1324. During these investigations, I have actively participated in debriefing defendants, witnesses, and informants; conducting surveillance; executing search and arrest warrants; and making arrests for alien smuggling-related offenses.

3. Through my training, experience, and interaction with more senior FBI and USBP Agents, I have become familiar with the methods employed by alien smugglers to smuggle, safeguard, and distribute aliens, and to collect and launder alien smuggling proceeds. These methods consistently generate many types of evidence such as those included in Attachment B.

## II

## PURPOSE OF AFFIDAVIT

4 This affidavit is submitted in support of the issuance of a search warrant for the residence located at 4231 Logan Avenue, apartment #F, San Diego, California 92113 (herein and after referred to as the "**TARGET RESIDENCE**") and a seizure warrant for a gray Ford Expedition bearing California license plate 5KCJ852, Vehicle Identification Number 1FMPU18L3XLA26779.

5. Affiant has personally surveilled the **TARGET RESIDENCE** and it is described as follows: The **TARGET RESIDENCE** is located within a small apartment complex consisting of two apartment buildings, 4231 Logan Avenue and 4241 Logan Avenue, San Diego, California. Each of the apartment buildings is a detached two story, brick building, tan in color, with each building numbered separately. Each building consists of six apartment units, three on each floor. Entry to each apartment in the complex is accessed from an open air courtyard positioned between the two buildings. The **TARGET RESIDENCE** is found on the second floor of the building numbered 4231 and is the southernmost unit on the second floor. None of the apartment units in the complex are individually labeled. The door to the **TARGET RESIDENCE** is white and has a security screen door attached. There is a set of metal and concrete stairs in the courtyard between the two buildings, running parallel. The entire complex is located on the south side of Logan Avenue. The entrance to the **TARGET RESIDENCE** faces to the North. Each apartment, including the **TARGET RESIDENCE**, has only one entrance; no rear entrance exists.

6. The evidence to be searched for and seized is listed in Attachment B to the applicable search warrants applications, incorporated herein.

7. The following is based on my own investigation, oral and written reports by other law enforcement officers, physical and electronic surveillances, interviews, subpoenaed and public records, data base checks, searches, and phone analysis. Since this affidavit is for a limited purpose, I have not included every fact known about this investigation. I set forth only facts necessary to establish foundation for the requested search warrant. Dates and times are approximate.

/ /

## III

## BACKGROUND

8. Record checks conducted by Border Patrol Agent L. Rivera through Department of Homeland Security approved databases and the California Department of Motor Vehicles database revealed that an individual by the name of Hector ARAUX-Sandoval was associated with the 4231 Logan Avenue.

## IV

## SIGNIFICANT EVENTS

**EVENT #1**

9. On October 29, 2007, affiant and USBP Agent Rivera were conducting surveillance in the vicinity of 4231 Logan Avenue in San Diego, California. At approximately 10:50 a.m., Agent Rivera observed Hector ARAUX-Sandoval and another unknown male enter a gray Ford Expedition bearing California license plate 5KCJ852, Vehicle Identification Number 1FMPU18L3XLA26779, registered to Hector ARAUX, 4231 Logan Avenue Apt C, San Diego, California 92113, and depart the area. Agent Rivera and the affiant followed the gray Expedition to the parking lot of an Auto Zone located on 43rd Street in San Diego, California. This parking lot is notorious for the presence of alien smuggling activities and has been identified by cooperating principals and defendants as the location where they meet to conduct transfers of undocumented aliens.

10. At approximately 11:00 a.m., Agent Rivera and the affiant observed a gold Chevrolet Avalanche arrive and park next to the Expedition. Two Hispanic females, later identified as Blanca HERNANDEZ-Cansino and Rocio HERNANDEZ-Cansino, exited the Avalanche and entered the back seat of the Expedition. The Expedition departed and Agent Rivera and the affiant followed it back to Logan Avenue. There, the male passenger of the Expedition exited the vehicle and guided Blanca and Rocio HERNANDEZ to a blue-green Chevrolet Astro van bearing California license plates. Agent Rivera and the affiant followed the Astro van driven by a female later identified as Maria VASQUEZ.

11. Agent Rivera and the affiant followed the Astro van as it continued northbound on Interstate 5. Suspecting Blanca HERNANDEZ and Rocio HERNANDEZ were undocumented aliens, Agent Rivera contacted the San Clemente Border Patrol checkpoint and requested a vehicle stop of the

Astro van. At approximately 12:15 p.m., Border Patrol Agents Arguilez and Avila observed the Astro van pass their location at the Border Patrol Checkpoint and conducted a vehicle stop. Agents Arguilez and Avila approached the Astro van and questioned the occupants as to their immigration status. The driver identified herself as Maria VASQUEZ, a United States citizen. The two female passengers, Blanca HERNANDEZ and Rocio HERNANDEZ admitted to being citizens and nationals of Mexico without any immigration documents allowing them to be or remain legally in the United States. Agents Arguilez and Avila placed all three individuals under arrest and transported them to the San Clemente Border Patrol checkpoint for processing.

12. At the Chula Vista Border Patrol Station, Blanca HERNANDEZ was interviewed. She stated in summary that she is a citizen and national of Mexico illegally present in the United States. She admitted to entering the United States illegally. HERNANDEZ advised that on October 28,2007, a Hispanic male, later identified through a photographic lineup as ARAUX, made smuggling arrangement with her mother's boyfriend, later identified as Ramon OCHOA-Perez, to have her smuggled into the Untied States. HERNANDEZ stated that evening she was smuggled into the United States in the trunk of a vehicle and taken to a two-story house. The following day, HERNANDEZ stated she was transported to a shopping center parking lot where she again saw ARAUX, this time wearing a cowboy hat. HERNANDEZ stated she was transported from the parking lot to a residential area in a gray SUV. In the residential area, HERNANDEZ was instructed to enter a green van. HERNANDEZ commented the van was later stopped by Border Patrol Agents.

13. Rocio HERNANDEZ was also interviewed and she stated in summary that she is a citizen and national of Mexico illegally present in the United States. She admitted to entering the United States illegally. HERNANDEZ stated that on October 28,2007, a Hispanic male, later identified through a photographic lineup as ARAUX, made smuggling arrangement with her mother's boyfriend, later identified as OCHOA, to have her smuggled into the Untied States. HERNANDEZ stated that evening, she was smuggled into the United States in the trunk of a vehicle and taken to a two-story house. HERNANDEZ stated the next day she was transported to a shopping center parking lot where she again saw ARAUX, this time in a cowboy hat. HERNANDEZ stated she was transported from the parking

lot to a residential area in a gray SUV. In the residential area, HERNANDEZ was instructed to enter a green van. HERNANDEZ commented the van was later stopped by Border Patrol Agents.

**EVENT #2**

14. On November 21, 2007, Agent Rivera, FBI Special Agent Joel K. Freund, FBI Special Agent Troy J. Murdock, and the affiant were conducting surveillance in the vicinity of 4231 Logan Avenue in San Diego, California. At approximately 10:45 a.m., Hector ARAUX was observed exiting the **TARGET RESIDENCE** while talking on a cellular telephone. ARAUX walked out to Logan Avenue and observed the approach of a burgundy Ford Expedition. The Expedition came to a stop and ARAUX spoke with a female in the front seat. Another female, later identified as Cynthia HUBART-Sanchez, exited the back seat of the Expedition and followed ARAUX into the **TARGET RESIDENCE**.

15. At approximately 2:20 p.m., Agent Rivera observed HUBART exit the apartment complex and enter a white Ford Expedition with two Hispanic males. The affiant contacted the San Diego Police Department (SDPD) and arranged to have a marked unit stop the Expedition when it left. The Expedition departed and approximately five minutes later was stopped. The driver of the Expedition did not possess any form of identification but gave SDPD Officers the name Juan Carlos PONCE-Macareno. The front passenger of the vehicle produced a Voter Registration Card from Mexico that identified him as Huber Antonio PALOMARES-Ponce. The rear passenger was identified as HUBART.

16. The Police Officers arrested PONCE for driving without a license and held the vehicle until Border Patrol Agents arrived to determine the immigration status of the occupants. Border Patrol Agents M. Osuna and M. Santos reported to the location at approximately 2:50 p.m. During subsequent questioning, the three occupants of the vehicle claimed to be citizens and nationals of Mexico without immigration documents entitling them to be or remain legally in the United States. Agents Osuna and Santos arrested PONCE, PALOMARES and HUBART and transported them to the Chula Vista Border Patrol Station for processing.

17. At approximately 8:00 p.m., HUBART was interviewed at the Chula Vista Border Patrol Station by Border Patrol Agent T. Maloney. HUBART stated she was smuggled into the United States

that morning using an imposter document and taken to a residence. HUBART commented that later in the day she was instructed to exit the house and enter a white vehicle nearby. Two Hispanic males entered the front seat of the vehicle. HUBART stated shortly after departing, a police unit stopped the vehicle. HUBART advised they were later turned over to Border Patrol.

**EVENT #3**

18. On June 19, 2008, Agent Rivera, FBI Special Agent Jamie S. Arnold, FBI Special Agent Hector M. Luna, and the affiant were conducting surveillance on 4231 Logan Avenue, San Diego, California. At approximately 6:45 a.m., Agents Rivera and Luna observed a suspected foot guide and a suspected smuggled alien, later identified as Alejandro MEDINA-Horta and Alberto MORALES-Cortes, approach the **TARGET RESIDENCE**. Shortly thereafter, MEDINA was observed using the telephone of a neighboring apartment. At approximately 7:00 a.m., MEDINA and MORALES were observed departing the apartment.

19. MEDINA and MORALES were followed to a trolley stop located at the intersection of Commercial Street and 32nd Street in San Diego, California. Agent Rivera requested the presence of uniformed agents to conduct a field interview of both subjects. At 7:50 a.m., Border Patrol Agents J. Chouinard and M. Denning responded to Agent Rivera's request. The agents approached two individuals matching the description provided by Agent Rivera and engaged them in a consensual conversation. The agents were in full Border Patrol uniform and identified themselves as Border Patrol Agents. MORALES was questioned about his immigration status. MORALES produced a United States passport bearing the name Sergio Antonio PAEZ. Agent Rivera approached the scene and determined the United States passport was not that of MORALES. When questioned regarding the imposter document, MORALES confirmed that it was not his passport and that he had used it to illegally enter the United States. MEDINA was questioned regarding his immigration status and he produced a legal permanent resident card bearing the name Alejandro MEDINA-Horta. Suspecting MEDINA was involved in the smuggling of MORALES into the United States, MEDINA was placed under arrest for suspicion of alien smuggling. At approximately 8:10 a.m., MEDINA and MORALES were taken into custody by Border Patrol Agents and transported to the Chula Vista Border Patrol Station for processing.

20. At the Border Patrol Station, MEDINA was advised of his Miranda Rights. MEDINA stated he understood his rights and was willing to answer questions without a lawyer present. MEDINA stated that on June 19, 2008 at approximately 4:30 a.m., MEDINA picked up MORALES at the Hotel Cortez in Tijuana, Mexico. MORALES had previously made arrangements with an alien smuggler named "Carlos" for whom MEDINA worked. MEDINA took MORALES to the San Ysidro Port of Entry where MEDINA and MORALES entered the United States through the pedestrian lanes using the imposter document that had been provided by the smugglers. MEDINA stated that he took the alien to the apartment of "Hector," later identified in a photographic lineup as ARAUX, as per the instructions of "Carlos." MEDINA stated that "Hector" lives in a cul-de-sac near the intersection of 43rd Street and Logan Avenue. MEDINA stated "Hector's" apartment is located on the second floor of the apartment building, to the left from the top of the stairs. MEDINA knocked on the door to "Hector's" apartment, but there was no answer. MEDINA then called "Hector" from a neighbor's phone, but again failed to get a hold of him. MEDINA provided the telephone number of "Hector" as (619) 823-0579. MEDINA stated he and MORALES left and boarded a bus that took them to the vicinity of a trolley stop. At the trolley stop, MEDINA and MORALES were arrested by Boarder Patrol Agents.

**EVENT #4**

21. Between May 9, 2008 and August 5, 2008, FBI and USBP Agents conducted thirteen surveillance operations at 4231 Logan Avenue in which ARAUX was observed entering and exiting 4231 Logan Avenue, apartment #F. On May 9, 2008 and August 5, 2008, ARAUX was observed exiting the apartment and depositing garbage in the dumpster, then returning to apartment #F.

22. On March 12, 2008, FBI Special Agent Jamie S. Arnold and San Diego Police Department Detective Lozano performed a canvass of the 4231and 4241 Logan Avenue apartment buildings. The residents of the apartment complex stated that the occupants of 4231 Logan Avenue, apartment #F were Hector ARAUX and his wife Luz Esther Roman.

**V**

**CONCLUSION**

23. Based on the above information and observations, I believe there is probable cause to search the structure and curtilage of the premises at 4231 Logan Avenue, apartment F, San Diego,

California, for evidence relating to violations of Title 8 U.S.C. 1324, including all items listed in the Attachment B and seize the gray Ford Expedition bearing California license plate 5KCJ852, Vehicle Identification Number 1FMPU18L3XLA26779.

24. Having signed this affidavit under oath, the affiant states that its contents are true and correct to the best of my knowledge, information and belief.

MURRY T. STREETMAN
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me
this day 22 of August 2008.

BARBARA L. MAJOR
United States Magistrate Judge